No. 19        September 29, 2015        183

IN THE OREGON TAX COURT
REGULAR DIVISION

BOARDMAN ACQUISITION LLC,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 5209)

PORT OF MORROW,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 5249)

Plaintiff Boardman Acquisition LLC (taxpayer) filed its appeal in February 2014, following an adverse decision of the Magistrate Division, claiming that Morrow County Assessor (the county) had improperly assessed additional taxes on property in a nonexclusive farm use zone taxpayer had purchased from the Port of Morrow. The additional taxes were imposed due to disqualification of the property from special assessment under ORS 308A.116. Plaintiff Port of Morrow (the Port) then filed its appeal in the Magistrate Division in July 2014 and requested special designation to the Regular Division and consolidation with TC 5209. As required by a contract between the Port and taxpayer, the Port had paid the additional taxes imposed on the property by the county, then requested a refund from the county, which was denied. Granting Defendant's cross-motion for summary judgment, the court ruled that as the property was not public property as of January 1, 2013, the date on which the disqualification was next taken into account on the assessment roll, the exception to the imposition of additional taxes found in ORS 308A.709(5) was not applicable, and the actions of the county assessor in imposing the additional taxes were valid.

Oral argument on cross-motions for summary judgment was held January 5, 2015, in the courtroom of the Oregon Tax Court in Salem.

Dan Eller, Schwabe Williamson & Wyatt PC, Portland, filed the motion and argued the cause for Plaintiffs (taxpayers).

Joseph A. Laronge, Senior Assistant Attorney General, Department of Justice, Salem, filed the cross-motion and

argued the cause for Defendant Department of Revenue (the department).

Decision for Defendant rendered September 29, 2015.

**HENRY C. BREITHAUPT, Judge.**

## I.   INTRODUCTION

These two cases have been consolidated for hearing and decision. Plaintiff in case TC 5209 (Boardman Acquisition) filed initially, claiming that Morrow County Assessor (the county) had improperly assessed additional taxes (Additional Taxes) on property (the Property) Boardman Acquisition had purchased from the Port of Morrow (the Port). The Property was located in a nonexclusive farm use zone. The Additional Taxes were imposed pursuant to ORS 308A.703(1)(b) by reason of disqualification of the Property from special assessment under ORS 308A.116. From an adverse decision of a magistrate, Boardman Acquisition appealed to this division.

As required by a contract between the Port and Boardman Acquisition, the Port had paid the Additional Taxes imposed on the Property by the county. The Port sought a refund of that payment, which was denied by the county. The Port then appealed to the Magistrate Division and that case was specially designated to this division.

The parties have submitted briefs, supplemental briefs, and additional briefs as to the relevant legislative history. The parties in cases TC 5209 and TC 5249 have adopted all briefs filed in this matter by their respective sides.

## II.   FACTS

The parties have filed stipulations of fact, which establish the following facts:

(1)   Boardman Acquisition LLC is a Delaware limited liability company.

(2)   Boardman Acquisition's business address is c/o Rackspace US Inc., 5000 Walzem Rd., Windcrest, TX 78218.

(3)   Defendant is the Department of Revenue, State of Oregon.

(4)   The property tax year appealed is tax year 2013-14.

(5)   The property that is the subject of this case is designated in the records of the Morrow County, Oregon, Assessor as Assessor's Account Nos. 4N2606-103; 11386 and 4N2606-104; 11455 (collectively, the Property).

(6)   Before August 6, 2012, the Port of Morrow, an Oregon port organized under the Oregon Revised Statutes (the Port), had leased the Property to a taxable tenant (Prior Tenant) that used the Property for a farm-related use.

(7)   Prior Tenant had qualified its use of the Property for special assessment as nonexclusive farm use zone farmland under ORS 308A.068.

(8)   Effective August 6, 2012, the Port and Prior Tenant executed a document entitled Lease Termination Agreement (the Lease Termination Agreement).

(9)   On August 6, 2012, the Port was the owner of record of the Property.

(10)   In an email dated August 7, 2012, the Port transmitted the Lease Termination Agreement and other information to the county.

(11)   In an email dated August 7, 2012, the county responded to Boardman Acquisition's August 7, 2012, email regarding the Lease Termination Agreement.

(12)   On August 7, 2012, the Port mailed and emailed a letter to the county notifying the county of the termination of the lease with Prior Tenant; and requesting the disqualification of the Property from special farm use and from special assessment.

(13)   Effective August 10, 2012 (the Purchase Date), Boardman Acquisition acquired the Property from the Port.

(14)   After purchasing the Property, Boardman Acquisition received Notices of Disqualification from Special Assessment as Farmland in a Non-EFU Zone dated May 29, 2013, from the county.

(15)   Boardman Acquisition was the owner of record of the Property from the Purchase Date through the date of the Notice.

(16)   The parties agree that the documents identified herein and identified on the attached list and included herewith (including the depositions transcripts and exhibits and comments thereto) are true and correct copies of the documents they purport to be and are authentic and admissible.

(17)   The Port's business address is PO Box 200, Boardman, OR 97818.

(18)   The Port leased the Property to Prior Tenant, subjecting the Property to assessment and taxation pursuant to ORS 307.110, for more than five years (from at least 2005, if not before).

(19)   Prior Tenant qualified the Property for special assessment as nonexclusive farm use zone farmland under ORS 308A.068 for the tax years at issue regarding the Additional Taxes the county assessed pursuant to ORS 308A.703.

(20)   Effective on the Purchase Date (August 20, 2012), Boardman Acquisition acquired the Property from the Port. The Port owned the Property since at least 2005.

(21)   Boardman Acquisition has been since the Purchase Date and currently is (as of the date of this order) the owner of the Property.

(22)   During November 2012, the county sent tax statements to Boardman Acquisition in the amount of the property taxes for the "Standard Property Tax" for tax year 2012-13.

(23)   During November 2013, the county sent tax statements to Boardman Acquisition in the amount of the property taxes for the "Standard Property Tax" as well as the Additional Taxes that first became due for tax year 2013-14.

(24)   No tax statements for the Property were sent by the county to the Port for any tax years after 2011-12.

(25)   On or about November 13, 2013, Boardman Acquisition paid the full amount of the Standard Property Tax.

(26)   On or about November 15, 2013, the Port paid the full amount of the Additional Tax (the Tax Payment).

(27)   On June 26, 2013, the Port requested a refund of the Tax Payment.

(28)   In a letter dated June 26, 2015, the county denied the Port's refund claim.

## III.   ISSUES

The issues in these proceedings are: (1) Does Boardman Acquisition have standing to bring its claim? (2) Does the Port have standing to bring its claim? and (3) Were the actions of the county in imposing the Additional Taxes on the Property valid?

## IV.   ANALYSIS

A.   *Standing of Plaintiffs*

The department has asserted that Boardman Acquisition has no standing to bring an action, as it is not aggrieved within the meaning of ORS 305.275(1)(b).[1] Under that statute, an act of an assessor must "affect the property of the person making the appeal," or must affect "property for which the person making the appeal holds an interest that obligates the person to pay taxes imposed on the property." The statute goes on to specify that "an interest that obligates the person to pay taxes includes a contract * * *."

The Additional Taxes due under ORS 308A.703, are ad valorem property taxes on real property, an *in rem* obligation. *See Seneca Sustainable Energy v. Lane County Assessor*, 21 OTR 366, 371 (2014) (citing ORS 311.405) ("[Property] taxes are *in rem* obligations, enforceable only by foreclosure of liens statutorily created for such purpose."). They could affect the Property, in the ownership of Boardman Acquisition, only if they became or remained a lien on the land. Once the Additional Taxes imposed on

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2013.

the property were paid by the Port, no lien for the payment of that amount existed, or could exist, on the Property. Thereafter, Boardman Acquisition was not aggrieved.

ORS 305.275(1)(b) also provides for an appeal by a person who, as to any property, has a contractual obligation to pay tax. Under its contract with Boardman Acquisition, the Port was obligated to pay the Additional Taxes imposed on the Property. The Port paid the Additional Taxes and applied for a refund of that amount. The request for a refund was denied by the county. The Port has standing to pursue its case as to the Property and the Additional Taxes at issue.

This court will proceed to address the arguments of the department and the Port with respect to the validity of the imposition of the Additional Taxes.

B.  *Exception From Imposition of Additional Tax*

All parties agree that, just prior to the actions the Port took to terminate the lease with the taxable Prior Tenant and to request the disqualification of the Property from special farm use assessment, the Property was qualified to be valued under the special assessment regime for nonexclusive farm use zone property. *See* ORS 308A.116.

The events triggering disqualification applicable to property that is specially assessed are set forth in ORS 308A.116. Those four events are:

(1)  Notification by the taxpayer to the assessor to remove the special assessment;

(2)  Sale or transfer to an ownership making it exempt from ad valorem property taxation;

(3)  Removal of the special assessment by the assessor by reason of the assessor determining that the land is no longer in farm use or does not meet the statutory income requirements; or

(4)  The act of recording a subdivision plat.

No party contends that there was any basis for the disqualification other than the notification to the county to remove the special assessment. The letter from the Port to the

county stated: "Please have this land disqualified from * * * special assessment."

The disqualification that followed triggers a statutory requirement that "an additional tax shall be added to the tax extended against the land on the next assessment and tax roll." ORS 308A.703(2).

ORS 308.709 provides relief from such extension of an additional tax in seven specifically described situations. Of those, no party asserts that any situation other than that set forth in ORS 308A.709(5) has any relevance to this case. That subsection, and the opening text of the section states:

> "Notwithstanding that land may have been disqualified from special assessment, no additional taxes may be imposed under ORS 308A.703 if, as of the date the disqualification is taken into account on the assessment and tax roll, the land is * * * Public property that was leased or rented to a taxable owner as described in ORS 307.110 at the time of disqualification, and the reason for the disqualification was the termination of the lease under which the land was assessed."

The first question is therefore whether ORS 308A.709(5) (Subsection 5) applies to the facts of this case. If it does, the Additional Taxes should not have been imposed, notwithstanding the disqualification of the land from special assessment, a disqualification that all parties agree occurred.

The application of Subsection 5 only applies when the reason for the disqualification was "the termination of the lease." The first constructional problem is that, as can be seen above in the discussion of ORS 308A.116, the termination of a lease is not one of the reasons listed in that statute for disqualification from special assessment. Nor, indeed, was the termination of any lease the basis for the request of taxpayer to disqualify the Property or the reason given by the county assessor in his notice of disqualification.[2]

However, this lack of explicit fit between Subsection 5 and ORS 308A.116 cannot end the analysis. If it did, ORS

---

[2] The reason for the disqualification is "Notification by the owner to the Assessor to remove the special assessment per ORS 308A.116(a)."

308A.709(5) would never have any application. It would instead be a relief provision with no imposition in respect of which to provide relief. Such a construction of a statute, one rendering it never having effect, is not favored. *See* ORS 174.010 (stating judges should interpret statutes so as to give effect to all provisions); *see also Quintero v. Board of Parole*, 329 Or 319, 324, 986 P2d 575 (1999) (citing *State v. K. P.*, 324 Or 1, 8, 921 P2d 380 (1996)).

This constructional problem can be solved if the statute is read as coupling a lease termination with an event described in ORS 308A.116. For example, a lease termination occurring contemporaneously with the transfer of the land to an exempt ownership could be a set of events that call for at least the potential operation of Subsection 5.

Additionally, a lease termination occurring at the same time as a notification by the owner to disqualify the land could be (and the court concludes it is) a situation in which Subsection 5 may apply. That situation is what occurred in this case.

However, for Subsection 5 to apply, there are other requirements to be met, or statutory conditions to be satisfied. First, and not at issue in this case, the property must have been leased or rented to a taxable owner at the time of disqualification.

Second, a condition stated in part in the predicate introductory language of the statute is that, "as of the date the disqualification *is taken into account* on the assessment and tax roll, the land *is* *** [p]ublic property that *was*" so leased or rented in the past. ORS 308A.709(5) (emphases added).

One present-tense condition and one past-tense condition are expressed. The conditions are to be evaluated at the time the disqualification "is taken into account on the assessment and tax roll." The question becomes when a disqualification from special assessment "is taken into account on the assessment and tax roll." Note that the event in question at this point in the analysis is not the time of the act of disqualification by the assessor—rather, it is the time that act of disqualification is taken into account on the roll.

The time that disqualification is taken into account on the roll is set forth in ORS 308A.068(3), which provides, as to nonexclusive farm use zone land:

"Whether farmland qualifies for special assessment under this section shall be determined as of January 1 of the *assessment year*. However, if land so qualified becomes disqualified prior to July 1 of the same *assessment year*, the land shall be valued under ORS 308.232, at its real market value as defined by law without regard to this section, and shall be assessed at its assessed value under ORS 308.146 or as otherwise provided by law. If the land becomes disqualified on or after July 1, the land shall continue to qualify for special assessment as provided in this section for the *current tax year*."

(Emphasis supplied.)

In applying the foregoing statutory rule, it should be remembered that ORS 308.007(1)(c) defines a "tax year" as a period beginning on July 1 and lasting for twelve months; ORS 308.007(1)(b) defines the "assessment year" as the calendar year; ORS 308.007(2) specifies that the assessment year beginning January 1 corresponds to the tax year beginning July 1 of the same calendar year; and, under ORS 308.210, the assessment roll is to be prepared as of January 1 of the assessment year—that is, the beginning of the calendar year.

Here, the disqualification occurred after July 1 of the 2012 "assessment year"—that is, the calendar year 2012. Therefore, the Property continued to qualify for special assessment for that current "tax year"—that is, the period from July 1, 2012, through June 30, 2013.

The statutes at issue in this case fit within the context of an annual cycle of assessment and taxation of property. In that annual cycle, most, if not all, changes in status are taken into account either on January 1 or July 1. Daily determinations could be done, but would present expensive and disruptive consequences in the annual system.

As stated above, in this case the disqualification of the Property would next have been taken into account on an assessment and tax roll as of January 1, 2013. Accordingly, unless, as of that date, a requalification for special

assessment had occurred—and no party contends it did—the disqualification of the land in question here was taken into account on the assessment and tax roll on January 1, 2013.

The present-tense condition of Subsection 5 therefore is to be evaluated from the point in time of January 1, 2013. The condition is that the property be, as of that date, "public property." No party asserts that the land in question here was public property on January 1, 2013. Accordingly, Subsection 5 cannot and did not apply to shield the property from imposition of additional tax.

It does not matter that the past-tense condition of Subsection 5 (that the property was leased by a public owner to a taxable lessee at the time of the disqualification) is satisfied as to this property. It indeed was, at the time of the disqualification, rented or leased to a taxable owner—the Prior Tenant. However, that is only one of two conditions that must be satisfied for Subsection 5 to be applicable. The other, a return to public ownership, to be determined as of a particular time, was not satisfied.

This result is not illogical. Recall that the Property was originally public land and exempt from tax under ORS 307.090. Subsection 5 assumes that the disqualification was related to the termination of the lease or rental to a taxable party. Upon that occurrence the land would return to the ownership that had existed prior to the lease—public ownership. If that public ownership continues, the history of the property is one of public ownership with a period of private use.

The legislature appears to have considered that pattern to be one for which the imposition of additional tax was not appropriate. The department has supplied legislative history of a component of what is now ORS 308A.709(5) that supports the conclusion that the legislative intent behind what is now the statute was to relieve public bodies of any tax obligation or lien on their property when a taxable lease ended and possible additional tax accrued. That legislative history does not specifically address a situation where land returns to public ownership and thereafter, before the next determination date—January 1 or July 1—becomes

the property of a taxable owner. However, the discussion in the legislative history strongly suggests that the legislature was providing for relief in situations where land returned to *and remained* in public ownership. Nothing in the legislative history suggests that the legislature intended to relieve property of the additional tax burden where the property returned to private taxable ownership.[3]

The Subsection 5 provisions, together with the introductory language of the statute, are grammatically correct. One status in the present tense as of January 1 is compared with something expressed in the past tense, disqualification, that occurred in either the past assessment year (the calendar year), or in the last tax year (the fiscal year ending June 30).

Several of the other specific situations described in ORS 308A.709 present a constructional challenge.[4] If the date as of which an event is evaluated is January 1, how is one to interpret provisions that require that, "as of" that date, land, for example "is *** acquired"? *See* ORS 308A.709(1)-(4). One construction would be that the acquisition must have occurred on that date—on January 1. Such a reading is inconsistent with the fact that January 1 is a legal holiday in Oregon. It is also inconsistent with the direction that the determination of status is to be "as of" and not "on" a certain date.

Considering, as already discussed, that the determination of status on any given January 1 is for the purpose of allowing a comparison of the status of the property to the status on the *prior* January 1, the statutory phrase appears to be most properly read as referring to something that has happened since the last January 1 and is continuing as of

---

[3] In 1999, ORS 308A.709 was revised to consolidate several previously separated provisions dealing with relief from imposition of additional tax. Or Laws 1999, ch 314, § 36. The provisions of Subsection 5 were those previously found in ORS 308.396(2) and (3). Those provisions had been added to ORS 308.396 by 1983 Or Laws, chapter 599, sections 8 and 9. It is the legislative history of the 1983 legislation that is particularly relevant to this case.

[4] This court acknowledges that the following discussion is dicta, as these other situations are not at issue in this case. However, the hearing on this matter involved a substantial discussion of the problem presented by verb tenses in the statutory scheme.

the determination date. Hence, "as of the date the disqualification is taken into account on the assessment and tax roll, the land is \*\*\* [a]cquired for wildlife management purposes," as stated in subsection (4), should be read as: "has, since the prior January 1 been acquired for, and currently is held for wildlife management purposes."

As mentioned above, this verb tense challenge is not present in this case, but the grammatical or syntactical problem was the subject of briefing and discussion by the parties.

As the Property was not public property as of January 1, 2013, the date on which the disqualification was next taken into account on the assessment roll, the exception to the imposition of Additional Taxes found in Subsection 5 is not applicable. The actions of the county assessor in imposing the Additional Taxes were valid.

C.   *Calculation of Additional Tax*

At the hearing on this matter a discussion occurred as to what the amount of Additional Taxes would be, assuming that the protection of Subsection 5 was not available.

The department asserts that the Additional Taxes are to be determined by comparing, for the statutorily determined period, the amount of tax that would have been due on property leased to a taxable owner without special assessment to the amount of tax due for the same period under the special assessment provisions.

The Port argues that the provisions of ORS 308A.703(2) set forth a calculation for additional tax that results in a computed amount of zero.

ORS 308A.703 provides, in relevant part:

"The additional tax shall be equal to the difference between the taxes assessed against the land and the taxes that would otherwise have been assessed against the land, for each of the number of years determined under subsection (3) of this section."

This statutory language calls for a comparison. The comparison involves a subtraction. As stated above, the department argues that the subtraction is simply the

subtraction of the smaller special assessment burden from the larger regular tax burden.

The Port argues that the subtraction is to be as follows:

Taxes Due In Exempt Ownership
(Always 0)

Minus

Taxes Assessed Against the Land
Under Special Assessment.

Perhaps recognizing that the foregoing formula would always yield a negative number, the Port states in its supplemental brief: "provided, however, that the amount could not result in a refund."

The first problem with the argument of the Port is that the statute in fact does not contain the words: "provided, however, that the amount could not result in a refund."

That fact is related to another difficulty. The statute setting forth a calculation of an amount to be paid must necessarily be premised on the view that the minuend is greater than the subtrahend.[5] Stated differently, the amount for "the taxes that would otherwise have been assessed" must be larger than "the taxes assessed against the land." This is only logical as the additional tax is to be just that, an additional amount to be paid, above what has already been paid under the special assessment regime. The position of the Port is contrary to this necessary conclusion.

The fundamental premise of the Port is that the phrase "taxes that would otherwise have been assessed" is to be the conclusion of the process and not an element of a calculation. From this premise the Port proceeds to another premise, namely that what "otherwise would have been assessed" is to express a result as if the land had not been leased but had remained in public ownership. If that had occurred, argues the Port, the amount that "otherwise would have been assessed" would have been zero.

---

[5] The court would apologize for taking the reader back to grade school, but no other efficient nouns are available.

The position of the Port is that in the event of disqualification and the end of a lease, the only additional tax is the tax that would have been due if the lease to a taxable owner had not occurred. Of course, in such case, there would have been no tax because the land would have been in exempt public ownership.

The position of the Port is a focus on the status of the land prior to the lease rather than a consideration of the tax due from a taxable owner with and without special assessment.

However, the position of the Port renders the provisions of Subsection 5 unnecessary and superfluous. Recall that Subsection 5 in fact provides a shield against the imposition of additional tax when a lease to a taxable lessee terminates. In such an event, the land would necessarily revert to public ownership—ownership of the former lessor. If, in such events, no additional tax amount would be computed as due under ORS 308A.703(2) as the Port argues, there would be no need for Subsection 5 to provide a shield from additional tax. There would be, in all such cases, a calculation that was governed by the initial status of the land as exempt. Here again, a construction that renders a statutory provision unnecessary must be rejected. ORS 174.010; *Quintero*, 329 Or at 324.

However, Subsection 5 does serve a function. In the event that a lease termination returns land to public ownership, and that ownership is in place on the relevant date, the additional tax amount, although positive, is not imposed. The additional tax amount is based on the difference between full value taxation of the land in the specified years prior to disqualification and the special assessment value of the land during the same period. From this potentially significant value, Subsection 5 serves as a shield. The legislative history provided by the department contains an extensive discussion by legislators of exactly this function— relief to public bodies from the otherwise negative effects of continuing liens for additional taxes on land they reacquired and continued to hold.

The objections of the Port as to the calculation of the additional tax are not valid.

## V.   CONCLUSION

For the reasons set forth above, the motion of the department is granted and that of Boardman Acquisition and the Port is denied. Now, therefore,

IT IS ORDERED that Plaintiffs' motion for summary judgment is denied; and

IT IS FURTHER ORDERED that Defendant's motion for summary judgment is granted.