440                    May 11, 2017                    No. 27

IN THE SUPREME COURT OF THE
STATE OF OREGON

BOARDMAN ACQUISITION, LLC,
a Delaware limited liability company,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Defendant.*

PORT OF MORROW,
*Plaintiff-Appellant,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Defendant-Respondent,*
*and*

MORROW COUNTY ASSESSOR,
*Defendant.*

(TC-RD 5209, 5249; SC S063682)

On appeal from the Oregon Tax Court.*

Henry C. Breithaupt, Judge.

Argued and submitted January 12, 2017.

W. Michael Gillette, Schwabe Williamson & Wyatt PC, Portland, argued the cause and filed the briefs for the appellant. Also on the briefs were Jordon R. Silk and Dan Eller.

Paul L. Smith, Deputy Solicitor General, Salem, argued the cause and filed the brief for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Brewer, Nakamoto, and Flynn, Justices.**

_____
   * 22 OTR 183 (2015).

   ** Baldwin, J., retired March 31, 2017, and did not participate in the decision of this case.

BALMER, C. J.

The judgment of the Tax Court is affirmed.

**BALMER, C. J.**

This case involves ad valorem property taxes. The land at issue had been exempted from some property taxes because it was specially assessed as nonexclusive farm use zone farmland under ORS 308A.068 (2013).[1] As we will explain, when that special assessment ends, the property ordinarily has an additional tax levied against it. The question here is whether an exception created by ORS 308A.709(5) applies to excuse the payment of that additional tax. The Tax Court agreed with the Department of Revenue and concluded that the exception was not available. *Boardman Acquisition LLC v. Dept. of Rev.*, 22 OTR 183 (2015). The Port of Morrow appeals. As we will explain, we conclude that the statutory text on which this case turns— "the date the disqualification [from special assessment] is taken into account on the assessment and tax roll," ORS 308A.709(5)—means the date the disqualification becomes effective on the assessment and tax roll. As a result of that holding, we affirm.

## I.   OVERVIEW OF LAW

Before considering the facts at issue here, it is helpful to first outline farmland special assessments generally. At its core, the farmland special assessment changes how the land is valued for tax purposes. Ordinarily, "[t]he real market value of property is the starting point for determining the amount of property tax." *Dept. of Rev. v. River's Edge Investments, LLC*, 359 Or 822, 825, 377 P3d 540 (2016) (citation and footnote omitted). In the case of farmland, however, the legislature explained that it did not want farmland to be valued at its real market value using "market data from sales for investment or other purposes not connected with bona fide farm use," because doing so would "encourage[] the conversion of agricultural land to other uses." ORS 308A.050. Accordingly, the legislature stated that it intended that "bona fide farm properties be assessed for ad valorem property tax purposes at a value that is exclusive of values attributable to urban influences or speculative purposes." *Id*.

---

[1] Except when expressly noted, all statutory references are to the 2013 version of the Oregon Revised Statutes.

To carry out that purpose, the legislature directed that property that qualifies for the farmland special assessment be valued using the income approach, not by examining comparable sales. *See* ORS 308A.092(2) ("The values for farm use of farmland shall be determined utilizing an income approach[,]" with the capitalization rate derived from loans on farm properties.). The special assessment thus allows a taxpayer to avoid some property taxes, because the property is valued for tax purposes at less than its real market value.

The avoided taxes remain a potential liability on the property, however, should the land lose its qualification for the special assessment. When specially assessed property is disqualified, the taxes that had been avoided for up to five years (in the case of farmland not zoned exclusively for farm use) are added to the next assessment and tax roll. ORS 308A.703(2), (3)(d)(A) (specifying period is lesser of five years or the actual period the land qualified for special assessment).[2] The statutes describe the avoided taxes added onto the roll as the "additional tax."

The additional tax is not assessed in some limited circumstances. This case turns on whether the exception set out in ORS 308A.709(5) applies to the land at issue here.

---

[2] ORS 308A.703 provides in part:

"(1) This section applies to land upon the land's disqualification from special assessment under any of the following sections:

"* * * * *

"(b) Nonexclusive farm use zone farmland under ORS 308A.116[.]

"* * * * *

"(2) Following a disqualification listed in subsection (1) of this section, an additional tax shall be added to the tax extended against the land on the next assessment and tax roll * * *. The additional tax shall be equal to the difference between the taxes assessed against the land and the taxes that would otherwise have been assessed against the land, for each of the number of years determined under subsection (3) of this section.

"(3) The number of years for which additional taxes shall be calculated shall equal the lesser of the number of consecutive years the land had qualified for the special assessment program for which disqualification has occurred or:

"* * * * *

"(d) Five years, in the case of:

"(A) Nonexclusive farm use zone farmland[.]"

ORS 308A.709, which lists the situations in which the additional tax is eliminated, provides:

"Notwithstanding that land may have been disqualified from special assessment, no additional taxes may be imposed under ORS 308A.703 if, as of the date the disqualification is taken into account on the assessment and tax roll, the land is any of the following:

"* * * * *

"(5)  Public property that was leased or rented to a taxable owner as described in ORS 307.110 at the time of disqualification, and the reason for the disqualification was the termination of the lease under which the land was assessed."

This case turns on which particular date is meant by the phrase "the date the disqualification [was] taken into account on the assessment and tax roll." The port argues that, on that date as correctly understood, the property was still owned by the port and therefore was "public property." Because the other conditions of the statute also had been met, the port asserts that under the statute, "no additional taxes may be imposed." The department counters that the port incorrectly identifies the date on which the disqualification was taken into account on the assessment and tax roll. As of the correct date, the department argues, the property was owned by a private entity and was no longer "public property." For that reason, it asserts, the additional tax was properly imposed.

## II.   FACTS

The Tax Court granted summary judgment in favor of the department based on stipulated facts, which we summarize here. At issue are taxes on two adjacent lots for the tax year 2013-14. For at least five years before that time, the Port of Morrow had owned that property and had leased it to a tenant. The tenant was subject to property tax. *See* ORS 307.110. The tenant qualified the property for special assessment as nonexclusive farm use zone farmland under ORS 308A.068.

Effective August 6, 2012, the port and the tenant cancelled the lease. The port notified the county assessor of

the lease termination on August 7. In doing so, it asked the county assessor to disqualify the property from special farm use and special assessment. *See* ORS 308A.116(1)(a) (specially assessed property may be disqualified on "request" of the taxpayer). The assessor's staff responded by email the same day:

> "This [disqualification] will be processed for 1/1/13, it is too late to process a [disqualification] for the current year. We are in the middle of a computer software change here and things are pretty hectic *** so I won't be processing this until later this fall but go ahead and send the official request letter[.]"

Four days after the lease was cancelled—on August 10, 2012—the port sold the property to Boardman Acquisition (Boardman). There is no contention that Boardman qualified the property for this special assessment (or any other). The sale contract required the port to pay any additional taxes assessed against the property because of the termination of the prior lease and the end of the special assessment. In May 2013, the county assessor sent a notice of disqualification to Boardman. The notice stated that the additional tax incurred by the prior tenant, $127,270.61, would be added to the 2013-14 tax year. Pursuant to its contract with Boardman, the port paid those taxes.

The port sought a refund of the taxes that it paid on behalf of Boardman. The county assessor denied the refund. The matter proceeded through the Magistrate Division of the Oregon Tax Court to the Regular Division, where the parties filed opposing motions for summary judgment. The Regular Division (the Tax Court) granted summary judgment for the department.

The Tax Court began with the statutory text, which eliminates the additional tax only "'if, as of the date the disqualification is taken into account on the assessment and tax roll, the land *is*'" "'[p]ublic property'" that had previously been leased to a taxable party and disqualified by the lease termination. 22 OTR at 190 (emphasis in original; additional emphasis deleted; quoting ORS 308A.709(5)). From that, the court concluded that it had to determine the date on which the disqualification had been "taken into account

on the assessment and tax roll," so that it could determine whether the land, at that particular point in time, met the conditions of ORS 308A.709(5): that it was, at that time, public property that previously had been leased to a taxable owner and the special assessment for which had been disqualified by termination of lease. 22 OTR at 190. Based on ORS 308A.068(3) (which we will discuss shortly), the court held that the disqualification was not "taken into account on the assessment and tax roll" until January 1, 2013. 22 OTR at 191. Because the land was not "public property" on January 1—Boardman had bought the property nearly four months earlier—the requirements of ORS 308A.709(5) had not been met. Therefore, the exception did not apply, and the additional tax was properly assessed against the property. 22 OTR at 191-92.

### III.   DISCUSSION

Throughout this opinion, we refer to the port as if it were the taxpayer. We emphasize, however, that the port's liability is through its agreement with Boardman to pay any additional taxes due because of the disqualification. *See* ORS 307.090(1) (generally, ports not liable for property taxes).

A.   *Statutory Text and Context*

The text of the exception at issue here, ORS 308A.709, provides, in part:

> "Notwithstanding that land may have been disqualified from special assessment, no additional taxes may be imposed under ORS 308A.703 if, as of the date the disqualification is taken into account on the assessment and tax roll, the land is any of the following:
>
> "* * * * *
>
> "(5)   Public property that was leased or rented to a taxable owner as described in ORS 307.110 at the time of disqualification, and the reason for the disqualification was the termination of the lease under which the land was assessed."

The parties do not dispute that the conditions listed in paragraph (5) were all met at *some* point in time—that is, that the property was public property, that it had been leased

to a taxable owner and qualified for a special assessment, and that the property became disqualified for that special assessment because of the termination of the lease. The parties also appear to agree that, if all those conditions are met "as of the date the disqualification is taken into account on the assessment and tax roll," then "no additional taxes may be imposed under ORS 308A.703." The issue before us, then, is to determine what that particular date is.

To do so, we must determine what is meant by "the date the disqualification is taken into account on the assessment and tax roll." That phrase contains two technical terms or concepts that we will review before considering the phrase as a whole.

1.   *Assessment and Tax Roll*

We begin with the phrase "the assessment and tax roll." The "assessment roll" is "a full and complete record of the assessment of the taxable property for each year as of January 1, at 1:00 a.m. of the assessment year." ORS 308.210(1).[3] That date—January 1, at 1:00 a.m.—is defined to be the "assessment date." *See* ORS 308.007(1)(a) ("'Assessment date' means the day of the assessment year on which property is to be assessed under ORS 308.210[.]"). The effective date for the assessment roll corresponds with the definition of "assessment year." The assessment year is defined as the calendar year, and thus begins on January 1. *See* ORS 308.007(1)(b).

The "assessment" roll becomes the "tax roll" when the assessor gives it to the tax collector for tax statements to be mailed in October. *See* ORS 311.115 ("The assessor shall deliver the roll to the tax collector each year at such time as the assessor and the tax collector agree is necessary to enable the mailing of tax statements on or before October 25. *** The assessment roll thereafter shall be a tax roll."). While the assessment year is the calendar year, the "tax year" is shifted six months forward and begins on July 1. *See* ORS 308.007(1)(c), (2). The question is whether the additional tax should have been imposed for the assessment year 2013 and the corresponding tax year 2013-14.

_____

[3] The formal contents of the assessment roll are specified in ORS 308.215.

Substantively, the assessment roll and the tax roll are not truly separate documents. *See* ORS 308.217(1) ("For purposes of assessment and taxation, the assessment roll and the tax roll of each county shall be deemed one continuous record.").[4] The purpose of the assessment and tax roll simply changes over time—specifically, the assessment roll becomes the tax roll when the assessor transfers it to the tax collector. *See* ORS 311.115 (delivery transforms assessment roll into tax roll). The legislature routinely uses "assessment and tax *roll*" in the singular in ORS 308A.709 and elsewhere.[5] Numerous statutes also specifically refer to the assessor making an entry on "the assessment and tax roll," implying again that it is a single document. *E.g.*, ORS 308A.083 ("the county assessor shall enter on the assessment and tax roll"); ORS 308A.089 ("the officer in charge of the assessment and tax roll" must "correct the current assessment and tax roll"); ORS 308A.362(6) ("the assessor shall indicate on the assessment and tax roll"). Because we understand "the assessment and tax roll" to be a single record in a legal sense, we refer to it in the singular.

2. *Disqualification*

"Disqualification" is a complex concept, describing something that happens on the termination of the special assessment. ORS 308A.116 lists the events that terminate the special assessment applicable to this particular property:

"(1)   Nonexclusive farm use zone farmland qualified for special assessment under ORS 308A.068 shall be disqualified from such special assessment upon:

---

[4] Although the assessment roll and tax roll are deemed to be the same at a substantive content level, that is not necessarily true at the level of the physical documents themselves. The actual form of the assessment roll may or may not be separate from the tax roll:

"The records constituting the assessment roll may be combined with or separated from the records constituting the tax roll. The records constituting each roll may be divided, for convenience, between the assessor's office and the tax collector's office, with or without duplication in whole or in part in either office."

ORS 308.217(2). For that matter, the rolls need not be paper; they may also be in electronic or other format. ORS 308.217(1).

[5] *See, e.g.*, ORS 311.205(1) ("After the assessor certifies the assessment and tax roll to the tax collector"); ORS 311.206(2) ("When taxes for a single tax year are added to an assessment and tax roll").

"(a)   Notification by the taxpayer to the assessor to remove the special assessment;

"(b)   Sale or transfer to an ownership making it exempt from ad valorem property taxation;

"(c)   Removal of the special assessment by the assessor upon the discovery that the land is no longer in farm use for failure to meet the income requirements under ORS 308A.071 or is no longer in farm use; or

"(d)   The act of recording a subdivision plat under the provisions of ORS chapter 92."

Here, the disqualification occurred under subsection (1)(a): The port gave notice to the assessor to remove the special assessment. It is apparent from the stipulated facts that the disqualification was appropriate because, with the termination of the lease, the property no longer qualified for special assessment.

The date on which disqualification occurs serves only a limited purpose: to determine the tax year in which the disqualification will have an effect. The general provisions regarding the effective date of disqualification are found in ORS 308A.068(3). That subsection provides:

"Whether farmland qualifies for special assessment under this section shall be determined as of January 1 of the assessment year. However, if land so qualified becomes disqualified prior to July 1 of the same assessment year, the land shall be valued under ORS 308.232, at its real market value as defined by law without regard to this section, and shall be assessed at its assessed value under ORS 308.146 or as otherwise provided by law. If the land becomes disqualified on or after July 1, the land shall continue to qualify for special assessment as provided in this section for the current tax year."

That statute functionally prescribes that the special assessment will apply only to whole tax years. As discussed above, the actual date of disqualification matters only as to whether it is before or after July 1; that will determine the year in which the special assessment ends and the additional tax, if any, is imposed. If the disqualification occurs before July 1, then the property does not receive a special assessment for that year at all; it is valued as if there had

been no special assessment. If the disqualification occurs on or after July 1, by contrast, then the property receives the special assessment "for the current tax year." Thus, the special assessment found on the assessment and tax roll on July 1 will continue until the following June 30.[6]

A hypothetical with dates may be useful. Suppose that a piece of property was qualified for special assessment during 2011 and effective as of January 1, 2012. The property thus would ordinarily be specially assessed for tax year 2012-13. If the property became disqualified before July 1, 2012—that is, before tax year 2012-13 began—then the property would not be specially assessed for tax year 2012-13. However, if the property became disqualified on or after July 1, 2012—that is, after tax year 2012-13 had begun—then the property would receive the special assessment "for the current tax year." The property would remain specially assessed for the 2012-13 tax year. The disqualification would have effect beginning the following tax year, 2013-14, which starts July 1, 2013.

ORS 308A.068(3) also indicates when the disqualification will become effective on the assessment and tax roll. When property is disqualified from special assessment before July 1, the statute indicates that there is no special assessment for the tax year beginning July 1. By implication, then, the special assessment must be removed from the tax roll effective July 1. When property is disqualified from special assessment on or after July 1, then the special assessment will continue through the end of the tax year (the following June 30). By implication, then, the disqualification would be effective on the assessment roll for the next tax year, and the assessment date for that assessment roll would be the following January 1.

---

[6] That understanding of the statute also accords the department's administrative rule, although the rule does not control the statute's meaning. OAR 150-308-1040 provides:

"(2) Qualification and Disqualification Dates:

"(a) To be entitled to farm use assessment, land must be qualified as of January 1 each year. * * *

"(b) All farm use disqualification takes effect July 1 following the disqualification."

### 3.  *Analysis of Text and Context*

In the context of ORS 308A.709, there would appear to be three possible dates on which one could say that the disqualification has been "taken into account" on the assessment and tax roll: the date the assessor learns of the disqualification, the date the assessor enters the disqualification on the roll, or the date that the disqualification becomes effective on the roll. The port argues for the date the assessor learns of the disqualification. The department maintains that it is the date the disqualification becomes effective.

Neither party here argues for the date being the date of entry on the roll. The entry on the roll appears to be an entirely ministerial task that need not occur at any particular time. Here, for example, the assessor's staff indicated that the entry would not be made "until later in the fall." No one asserts that the assessor lacked authority to make that entry on some future date after the assessor had received notice of the disqualification.

The port asserts that the relevant date is the date the assessor learns of the disqualification. It maintains that the assessment date, January 1 at 1:00 a.m., is simply an arbitrary point in time that does not limit in any way when the assessor collects the information needed for the assessment and tax roll. Because the assessor collects information throughout the year, the port maintains, we should treat the assessor's knowledge of the disqualification as the equivalent of the disqualification being "taken into account on the assessment and tax roll."

We are not persuaded. The statutory text explicitly goes beyond mere notice to the assessor. By referring to when the disqualification is "taken into account," the statute appears to require the assessment and tax roll, at a minimum, to reflect the disqualification in some way. The port's interpretation, by contrast, does not require the disqualification to be connected to the roll at all. The facts here are illustrative: The assessor's staff told the port that the disqualification would not be entered on the assessment and tax roll until "later this fall"—an entry that, regardless of when it was actually made, would only become effective on the assessment roll as of January 1, 2013, and would only

affect the property tax for tax year 2013-14, beginning the following July. We cannot fairly say that a disqualification has been "taken into account on the assessment and tax roll" when the assessor has taken no steps to cause the roll to reflect the disqualification.

The port asserts that the prior version of the statute would have eliminated the additional tax based on notice to the assessor, and that the legislature, when it adopted the present version of ORS 308A.709(5), did not intend to change that prior law. In our view, however, the prior version of the statute confirms our conclusion from the text. As we will explain, the change to the prior statute indicates the legislature's intent to move away from using the date of notice to the assessor.

The port correctly notes that the wording of ORS 308A.709 derived in part from the wording of *former* ORS 308.396(2) and (3). The text of *former* ORS 308.396 (1997) provided:

"(2)   No additional tax shall be collected *** upon land described in ORS 270.100 to 270.190, upon land acquired under ORS 390.121 or upon land acquired for wildlife management purposes under ORS 496.146 that has received special assessment as farmland under ORS 308.370, special assessment under ORS 307.110 or special assessment as forestland or small tract under ORS chapter 321 when the lease under which the land was assessed is terminated.

"(3)   Subsection (2) of this section applies to all land described therein *upon notice to the county assessor* by the Oregon Department of Administrative Services, the State Parks and Recreation Department or the State Department of Fish and Wildlife regardless of when the assessment was made or the lease terminated."

(Emphasis added.)

The port is thus correct that that prior statute expressly made the exception to the additional tax depend on the date of notice to the assessor. The current statute, however, makes the exception depend on "the date the disqualification is taken into account on the assessment and tax roll." By rewriting the condition so completely, the legislature seems to have decided to change the criteria from the

assessor receiving notice of the disqualification, and instead focusing on a more direct relationship between the disqualification and the assessment and tax roll. *See, e.g.*, *Fifth Avenue Corp. v. Washington County*, 282 Or 591, 597-98, 581 P2d 50 (1978) ("In the construction of amendatory acts, it is presumed that material changes in language create material changes in meaning.").

The legislative history of the current statute, ORS 308A.709, does not enlighten us about the legislature's subjective intent in changing that wording. The history does show, however, that—contrary to the port's argument—the legislature knew that it was making substantive changes to the law.[7]

The remaining possible meaning for "the date the disqualification is taken into account on the assessment and tax roll" is the date the disqualification becomes effective on the assessment and tax roll. That understanding gives effect to the requirement that the disqualification must have been "taken into account on the assessment and tax roll": the roll not only shows the disqualification, but it also gives legal effect to the disqualification. That understanding also recognizes that, prior to the effective date on the roll, the assessor may add or remove a disqualification from the roll without any apparent legal consequence.

As we have explained, the date on which the disqualification becomes effective on the roll does depend on when

_____

[7] ORS 308A.709 was adopted as part of Senate Bill 248, a comprehensive attempt to organize the farm use special assessment statutes. *See* Exhibit 5, Senate Revenue Committee, SB 248, Feb 9, 1999 (presented by Gary Wright, Department of Revenue). The working group that drafted the measure had agreed that there would be "no change in policy," and the group represented that it had not made any *policy*-level changes. Exhibit 8, House Revenue Committee, SB 248, May 6, 1999 (written testimony of Don Schellenberg, Associate Director of Governmental Affairs, Oregon Farm Bureau (emphasis added)).

The history leaves no doubt, however, that Senate Bill 248 did make "substantive changes" to the law. *See* Exhibit 5, Senate Revenue Committee, SB 248, Feb 9, 1999 (presented by Gary Wright, Department of Revenue) ("The proposed bill makes the following substantive changes to existing farm special assessment statutes," and listing seven); *see also* Exhibit 5, Senate Revenue Committee, SB 248, Mar 15, 1999 (revenue impact statement) ("This measure reorganizes the farm use statutes but do[es] not change existing law *significantly*"; bill's intent "was to make the laws more accessible for the users without *substantial* changes to the law" (emphases added)).

disqualification occurs. As provided in ORS 308A.068(3), a disqualification that occurs between January 1 and June 30 becomes effective on the assessment and tax roll as of July 1. A disqualification that occurs between July 1 and December 31 will not affect the taxes due until the following July 1. In the latter case, however, the disqualification will become effective on the assessment and tax roll as of January 1 at 1:00 a.m., the assessment date. *See* ORS 308.210(1).

Once the disqualification becomes effective on the roll (either on January 1, the effective date of the assessment roll generally, or July 1, when the assessment roll becomes effective as the tax roll for the tax year), then the disqualification has been "taken into account" on the assessment and tax roll.

B.  *Application to This Case*

With that, we return to the issue in this case: On the facts here, what is "the date the disqualification is taken into account on the assessment and tax roll"?

For the port to succeed in this appeal, we would have to conclude that the disqualification was "taken into account on the assessment and tax roll" between August 7 (the date it gave notice to the assessor to remove the disqualification) and August 10 (the date that it sold the property to Boardman). The only possible interpretation of ORS 308A.709(5) that would fit that narrow framework is the date that the port gave notice to the assessor. We have rejected the port's argument to that effect. Accordingly, we affirm the Tax Court's result.

We also conclude that the Tax Court's reasoning was sound. We have determined that "the date the disqualification is taken into account on the assessment and tax roll" means the date the disqualification becomes effective on the roll. Because the disqualification here occurred after July 1, the disqualification itself did not affect the assessment roll for assessment year 2012, or the tax roll for tax year 2012-13. *See* ORS 308A.068(3). The assessor entered the data on the assessment roll at some point after August 7, but the entry did not cause the disqualification to become

effective. The disqualification became effective on the assessment roll on January 1, 2013. *See* ORS 308.210(1). On that date, the land did not meet the requirements for eliminating the additional tax under ORS 308A.709(5), because by that date it was owned by Boardman, not the port. Accordingly, we conclude that the Tax Court correctly granted summary judgment for the department.

The judgment of the Tax Court is affirmed.