468　　　　　　　March 10, 2021　　　　No. 20

IN THE OREGON TAX COURT
REGULAR DIVISION

RIVER VALE LIMITED PARTNERSHIP,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 5390)

Plaintiff (taxpayer) sought to prove at trial that the county assessor incorrectly determined the amount of the additional tax and interest ("Additional Assessment") imposed upon the withdrawal of Plaintiff's land from special assessment under the Open Space Lands Statutes. Specifically, taxpayer sought to challenge two values the difference of which constitutes a cap on the Additional Assessment under ORS 308A.318(2). Defendant Department of Revenue (the department) initially moved for summary judgment. The court first determined that the "year of withdrawal" under ORS 308A.318(2) is the year of assessment, meaning the calendar year. ORS 308.007(1)(d). Next, the court concluded that the "last year of classification" is the assessment year preceding the assessment year in which the land is withdrawn from the Open Space Land Statutes. Finally, the court concluded that the "act" affecting taxpayer's property and starting the clock for filing an appeal with the Magistrate Division was the withdrawal of the property from Open Space classification, because until then the "year of withdrawal" could not be known. The court denied the department's motion for summary judgment and allowed the case to proceed to trial.

Oral argument on Defendant's Motion for Summary Judgment was held remotely on July 16, 2020.

Alex C. Robinson, CKR Law Group, Lake Oswego, filed a response and argued the cause for Plaintiff.

Daniel Paul, Senior Assistant Attorney General, Department of Justice, Salem, filed the motion and argued the cause for Defendant.

Decision rendered March 10, 2021.

**ROBERT T. MANICKE, Judge.**

I.　INTRODUCTION

In this property tax case, Defendant Department of Revenue (the department) has moved for summary judgment, asking the court to uphold the assessment by the Deschutes County Assessor (the assessor) of additional tax

and interest (the "Additional Assessment") imposed upon the withdrawal of Plaintiff's (taxpayer's) land from assessment under ORS 308A.300 to 308A.330 (the "Open Space Lands Statutes"). Taxpayer does not contest the withdrawal but resists the department's motion, seeking to prove at trial that the assessor incorrectly determined the amount of the Additional Assessment. Specifically, taxpayer seeks to prove two values, the difference of which constitutes a cap (the Cap) on the Additional Assessment under ORS 308A.318(2).[1] Taxpayer intends to prove that the Cap, correctly determined, reduces the amount of the Additional Assessment.

## II.   FACTS

The parties stipulate to the following facts. Taxpayer purchased a 36.06-acre parcel consisting of land in Deschutes County (the Property) on January 27, 2017, for $4,500,000.[2] The assessor had classified the Property as "open space land" (Open Space Land) in 1984, under what is now ORS 308A.300(1), and the property was still so classified when taxpayer bought it. On October 31, 2017, taxpayer's Land Development Manager sent an email to the assessor's office stating in part: "We acquired taxlot 181113C001300 earlier this year and plan to improve the land to finished home lots beginning in a few weeks. We are trying to understand the tax breakdown as we believe there will be farmland deferral owed. Is there a way for us to get that exact amount and when that will be due?" The assessor's office responded that day, stating that, as of that date, the potential additional tax liability amount plus interest was $442,097.70.

On February 27, 2018, the assessor's office sent taxpayer a letter stating in part: "In compliance with ORS 308A.718 and 308A.724, this is official notification that the special assessment of 36.06 acres of Open Space Specially Assessed land on the above real property account(s) have been disqualified by the assessor for the following reason.

---

[1] Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) are to the 2017 edition.

[2] The property tax statement for tax year 2017-18 shows a zero value for improvements, and the parties have not raised improvements as an issue.

–The land is no longer qualified because the use of the land has been applied to some use other than as open space land." The amount of "open space additional tax" stated in the February 27 letter was $495,887. Taxpayer inquired about the computation of the amount due, and the assessor responded. Taxpayer appealed to the Magistrate Division on May 18, 2018. Taxpayer's appeal in this division of the court is limited to its claim that "the amount of additional taxes and interest quoted by the assessor exceeds the limitations provided within ORS 308A.318(2)." The court understands this to mean that taxpayer challenges only the dollar amount of the Cap, not the amount of additional tax or interest that would be determined under ORS 308A.312(3) before application of the Cap pursuant to ORS 308A.315(5).

The parties stipulate that the assessor recorded the following values for the Property on the roll during the annual assessment process. Taxpayer does not stipulate that these values are accurate or that they control for purposes of determining the Cap:

- Real market value determined under ORS 308.205 (RMV) (tax year 2017-18): $1,803,000

- RMV (tax year 2018-19): $4,500,000

- Maximum assessed value determined under ORS 308A.315(3) (MAV)[3] (tax year 2017-18): $55,215

Finally, the parties have stipulated that the assessor determined and placed on the roll for tax year 2017-18 the amount of $36,060 "pursuant to ORS 308A.315(5)." The parties refer to this value as the "taxable specially assessed value," a term that does not exist in Oregon property tax law. Based on the reference to ORS 308A.315(5) and the parties' usage in these proceedings, the court understands the parties to agree that the assessor determined for annual assessment purposes that the "open space value" of the Property, *i.e.*, its RMV determined under ORS 308.205 but subject to the assumption that its highest and best use was its "current open space use" as required by ORS 308A.315(5)(a),

---

[3] The court understands the parties' stipulated term "maximum specially assessed value" to correspond to the statutory term "maximum assessed value" as defined in the statute the parties cite. *See* ORS 308A.315(3)-(4).

was \$36,060. The court understands the parties to agree further that the assessor treated this same \$36,060 value as the Property's "assessed value" for tax year 2017-18 under ORS 308A.315(2) because it was less than the MAV of \$55,215. *See* ORS 308A.315(2) ("assessed value" is lesser of "maximum assessed value" or "open space value determined under subsection (5)"). In its motion, Defendant referred to \$36,060 as "the value of the land as open space, determined pursuant to ORS 308A.315(5)" and as "the value on which plaintiff's property taxes were assessed for that year." At oral argument, taxpayer's counsel stated that "the *taxable specially assessed value* [under ORS 308A.315(2)] is the lesser of either the maximum assessed value or the open space value under [ORS 308A.315(5)]" (emphasis added). As with the other values recited above, taxpayer does not agree that \$36,060 is accurate or that it controls for purposes of the Cap.

In this order, the court uses the term "Open Space Value" to mean a value determined pursuant to ORS 308A.315(5). The court finds that the parties agree that the assessor determined that the Open Space Value of the Property for tax year 2017-18 was \$36,060. The court uses the term "Assessed Value" or "AV" to mean a value determined as the lesser of (1) the property's MAV or (2) its RMV or Open Space Value, whichever is applicable in context, pursuant to ORS 308A.315(2). The court finds that the parties agree that the assessor determined that the AV of the Property for tax year 2017-18 was \$36,060. Again, taxpayer does not agree that \$36,060 is the accurate value for either purpose.

## III.   LEGAL BACKGROUND

The legislature adopted the Open Space Lands Statutes in 1971 as one of the early "special assessment" property tax programs that now encompass all of ORS chapter 308A. *See* Or Laws 1971, ch 493; *see generally Boardman Acquisition, LLC v. Dept. of Rev.*, 361 Or 440, 442-44, 393 P3d 1147 (2017) (overview of farmland special assessment).[4]

---

[4] The first such programs include the commonly used farm use special assessment program and the program for certain forest land. *See* Or Laws 1963, ch 577 (establishing comprehensive farm use special assessment program tied to

In lieu of the familiar RMV based on a hypothetical arm's-length transaction,[5] these programs assign a value to qualifying property that is intended to be low, reflecting restrictions that limit the property's use to purposes that the legislature considers socially beneficial.[6] On the other hand, if the property's use changes to one that is not thus favored, the law governing the special assessment program typically requires the assessor to recover some or all of the accumulated difference in tax. Most programs also require the assessor to determine this difference annually, and to note on the assessment and tax rolls that additional amounts will become due if the special assessment program ceases to

---

zoning laws under ORS chapter 215 and providing for up to five years' worth of additional tax upon disqualification, with annual notification on assessment and tax roll). The legislature adopted similar concepts for certain forest land in 1965. *See* Or Laws 1965, ch 191, § 1 (amending *former* ORS 321.620 to add additional tax for land discovered to no longer be used primarily as forest land, based on up to prior five years' difference, with annual notification on assessment and tax roll); *cf.* Or Laws 1981, ch 720, § 8 (creating property tax exemption for locally designated riparian land, with additional tax upon withdrawal of up to five times "the amount of taxes that would have been assessed against the land had it been valued" according to its RMV "during the preceding tax year"); Or Laws 2003, ch 539 (creating program assessing wildlife habitat land at value different from RMV; assessing up to 10 years' additional tax upon disqualification pursuant to ORS 308A.703).

[5] *See Powell Street I, LLC v. Multnomah County Assessor*, 365 Or 245, 247, 445 P3d 297 (2019) (defining RMV).

[6] For example, under ORS 308A.300(1), Open Space Land is:

"(a) Any land area so designated by an official comprehensive land use plan adopted by any city or county; or

"(b) Any land area, the preservation of which in its present use would:

"(A) Conserve and enhance natural or scenic resources;

"(B) Protect air or streams or water supply;

"(C) Promote conservation of soils, wetlands, beaches or tidal marshes;

"(D) Conserve landscaped areas, such as public or private golf courses, which reduce air pollution and enhance the value of abutting or neighboring property;

"(E) Enhance the value to the public of abutting or neighboring parks, forests, wildlife preserves, nature reservations or sanctuaries or other open space;

"(F) Enhance recreation opportunities;

"(G) Preserve historic sites;

"(H) Promote orderly urban or suburban development; or

"(I) Retain in their natural state tracts of land, on such conditions as may be reasonably required by the legislative body granting the open space classification."

apply. *See, e.g.*, ORS 308A.083 (for specially assessed farm use zone farmland, requiring county assessor to enter on the annual roll the "potential additional tax liability"); ORS 308A.362(6) (same for tax-exempt and partially tax-exempt riparian land).

In a comprehensive law in 1999, the legislature standardized procedures (and associated terminology) by which property enters and exits many of the most commonly used special assessment programs, and the legislature recodified most of the governing statutes together in new ORS chapter 308A. *See* Or Laws 1999, ch 314; ORS 308A.700 - 308A.733 (providing procedures for determining and assessing additional taxes for certain farmland, forestland, wildlife habitat and conservation easement properties). The Open Space Lands Statutes largely escaped this procedural standardization, however, and they continue to include very distinct features: not only the method for computing the Additional Assessment (and accordingly, its potential size) and the application of percentage-based penalties in addition to the Additional Assessment, but also the procedure for exiting the program and the use of the term "withdrawal" rather than "disqualification" as used in most other programs.

The substitute for RMV prescribed in the Open Space Lands Statutes is the Open Space Value, computed pursuant to ORS 308A.315(5), which requires the assessor to assume that "the highest and best use of the land" is limited to "the current open space use." The assessor is specifically prohibited from "consider[ing] alternative uses to which the land might be put." ORS 308A.315(5)(a).[7] As with other special assessment programs, the assessor is required to determine two parallel sets of values for Open Space Land when compiling the annual assessment and taxation rolls: the values actually used to determine the tax due each year

---

[7] The Open Space Value may or may not be the value on which tax ultimately is imposed for a particular tax year; as with all property, the tax limitations regime known as Measure 50 overlies the Open Space Lands Statutes. *See* Or Const, Art XI, § 11. The statute implementing Measure 50 sets the taxable, "assessed," value as the lesser of the Open Space Value or the property's MAV. *See* ORS 308A.315(2). In this case, however, MAV is not an issue: For purposes of the assessment for tax year 2017-18, the assessor determined that the Property's MAV ($55,215) exceeded its Open Space Value ($36,060), and that the Open Space Value therefore was the AV.

the property is classified as Open Space Land, and a second set of values "as if" the property were not so classified, the latter set used only to determine the potential monetary consequences if the property is withdrawn from Open Space Land classification:

| Values Actually Used Each Year | How Determined | "As if" Values | How Determined |
|---|---|---|---|
| Open Space Value<br><br>ORS 308A.315(5) | RMV, but assumes the land will be used solely for its current open space use | "As if" Real Market Value<br><br>ORS 308.215 (1)(a)(E) | No assumption of open space use |
| Assessed Value<br><br>ORS 308A.315(2) | Lesser of MAV or Open Space Value | "As if" Assessed Value<br><br>ORS 308.215 (1)(a)(I)[8] | Lesser of "as if" MAV or "as if" RMV |
| Maximum Assessed Value<br><br>ORS 308A.315 (3)-(4) | Greater of 103% of last year's AV or 100% of last year's MAV | "As if" Maximum Assessed Value<br><br>ORS 308.215 (1)(a)(I) | Greater of 103% of last year's "as if" AV or 100% of last year's "as if" MAV |

The assessor also must indicate on the roll that the property is subject to special assessment as Open Space Land and must include the "amount of additional taxes which would be due if the land were not" classified as Open Space Land. ORS 308A.312(5). The additional tax for any one year essentially is (1) the "as if" AV times the cumulative tax rate for that location, less (2) the actual AV times that same tax rate.[9]

---

[8] For general definitions under Measure 50 of AV and MAV for nonspecially assessed property, see ORS 308.146.

[9] This comparison ignores the possibility of "compression" under the 1990 property tax limitation provision known as Measure 5. *See* Or Const, Art XI,

Three major features distinguish the Additional Assessment for Open Space Land from other special assessment programs. First, while the farm use and forestland programs limit the number of prior years' additional taxes that become due upon disqualification, the Open Space Lands Statutes require additional tax to be collected for *all* prior years in which the property was classified as Open Space Land. *See* ORS 308A.318(2) ("each year in which the land was classified"). Second, the Open Space Lands Statutes require interest to be paid on the additional tax (computed from the date the additional tax would have been payable for each prior year), and the statutes impose penalties of up to 40 percent of the additional tax and interest amount if the owner fails to notify the assessor before changing the use of the property. *See id.* (interest); ORS 308A.321 (penalties).[10] Third, the Open Space Lands Statutes cap the Additional Assessment at the difference between two component values:

- the Open Space Value for the last year of classification; and

- the RMV for the year of withdrawal.

*See* ORS 308A.318(2) (Additional Assessment is "limited to a total amount not in excess of the dollar difference in the value of the land as open space land for the last year of classification and the real market value under ORS 308.205 for the year of withdrawal."). It is the amount of the Cap, determined by the value of each component value, that is at issue in this case.

## IV. ISSUES

(1) When were the "last year of classification" and the "year of withdrawal"?

(2) Is taxpayer precluded from contesting the values that are the components of the Cap?

---

§ 11b. For background on "compression," see Oregon Department of Revenue, *A Brief History of Oregon Property Taxation* 3-4, 7-8, *available at* https://www.oregon.gov/DOR/programs/gov-research/Documents/303-405-1.pdf (last visited Mar 3, 2021).

[10] In this case, the assessor appears to have treated taxpayer's October 31, 2017, email as a "notice of request for withdrawal"; the assessor did not assess penalties.

## V.   STANDARDS OF REVIEW

This division of the court reviews a Magistrate Division decision *de novo* based on the record developed in this division. ORS 305.425(1); *see also* ORS 305.501(6). The court grants a motion for summary judgment only if "the pleadings *** declarations, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law." Tax Court Rule (TCR) 47 C. *See Christensen II v. Dept. of Rev.*, 23 OTR 155 (2018) (citing *Two Two v. Fujitech America, Inc.*, 355 Or 319, 331, 325 P3d 707 (2014)). "No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable [factfinder] could [find] for the adverse party on the matter that is the subject of the motion for summary judgment." TCR 47 C. The adverse party has the burden of producing evidence on any issue raised in the motions as to which the adverse party would have the burden of persuasion at trial. *Id.*

## VI.   ANALYSIS

A.   *When were the "last year of classification" and the "year of withdrawal"?*

The court first determines what periods constitute the "last year of classification" and the "year of withdrawal" of the Property under ORS 308A.318(2) in order to identify the dates as of which the two values are established that determine the amount of the Cap.[11] Taxpayer claims that the last year of classification was the tax year 2017-18, and that the year of withdrawal was the tax year 2018-19. The department agrees that the last year of classification was the tax year 2017-18 but the department expresses no view as to whether the year of withdrawal was tax year 2017-18 or tax year 2018-19 because the RMV on the roll for both tax years was sufficiently high that the Cap amount well exceeds the

---

[11] The Open Space Lands Statutes lack a counterpart to ORS 308A.068(3), which provides, in part: "Whether farmland qualifies for special assessment under this section shall be determined as of January 1 ***. If the land becomes disqualified on or after July 1, the land shall continue to qualify *** for the current tax year."

additional tax and interest amounts determined under ORS 308A.312(3).

    The Open Space Lands Statutes do not define "last year of classification" or "year of withdrawal." Ambiguity arises because the property tax statutes refer sometimes to the calendar year and sometimes to the fiscal year of July 1 through June 30. However, ORS 308.007 defines certain uses of the term "year" for purposes of property taxation, obviating analysis under the methodology prescribed in *State v. Gaines*.[12] *State v. Taylor*, 271 Or App 292, 298, 350 P3d 525 (2015) ("[W]hen a term is defined by statute, we look to the statutory definition to ascertain the plain meaning of the term[.]"). The term "assessment year" refers to a calendar year, while a "tax year" is a 12-month period beginning July 1. ORS 308.007(1)(b), (c). Each assessment year "corresponds to" the tax year beginning July 1 of the same calendar year. ORS 308.007(2). The word "year," standing alone, refers to the assessment year, *i.e.*, to the calendar year. ORS 308.007(1)(d). Each of these definitions applies "unless the context or a specially applicable definition requires otherwise." ORS 308.007(1).

    Starting with the "year of withdrawal," the court finds that the assessor withdrew the Property from classification as Open Space Land by the act of announcing the withdrawal in the letter to taxpayer dated February 27, 2018.[13] The default definition of "year" in ORS 308.007(1)(d) would require the court to treat the "year of withdrawal" as the assessment year 2018, which corresponds to the tax year July 1, 2018 through June 30, 2019. The court sees nothing in the context of the Open Space Lands Statutes that requires a different interpretation of "year of withdrawal."

    The court next determines the "last year of classification." This term requires the court to address the fact that the withdrawal did not occur cleanly at the turn of a new

---

[12] *See* 346 Or 160, 171-72, 206 P3d 1042 (2009) (establishing methodology for statutory interpretation: first, text and context; second, legislative history; finally, maxims of statutory construction).

[13] The letter uses the term "disqualified," perhaps borrowing from a form letter applicable to one of the more common special assessment programs to which standardized "exit" procedures apply. *See, e.g.*, ORS 308A.718 (notices of "disqualification").

assessment or tax year, but took place approximately seven weeks after the beginning of the assessment year 2018 and approximately eight months after the start of the tax year 2017-18. Not surprisingly for a program tied to the annual property tax cycle, the Open Space Lands Statutes imply that classification status is determined on a full-year basis. *See, e.g.*, ORS 308A.306 (requiring taxpayer to apply for classification during the calendar year preceding "the first assessment year *for which* such classification is requested" (emphasis added)); ORS 308A.312(2) (assessor to record "as if" assessed value "each year the land is classified").[14] The statutes contain no provision for proration or partial-year classification. The court concludes that an assessor's "withdrawal" removes the land from open space classification for the entire assessment year in which the withdrawal occurs, and for the corresponding tax year. The last year of classification, then, is the assessment year (and corresponding tax year) preceding the assessment year in which the act of withdrawal occurs.

In this case, the year of the Property's withdrawal from classification as Open Space Land was the assessment (calendar) year 2018 and the tax year beginning July 1, 2018. The last year of the Property's classification was the assessment year 2017 and the tax year beginning July 1, 2017.

B.   *Is taxpayer precluded from contesting the values that are the components of the Cap?*

The court now turns to the main issue the parties identify: whether taxpayer may contest the values the assessor placed on the roll for the two components of the Cap. Taxpayer seeks to prove at trial that the Property's Open Space Value as of January 1, 2017, was higher than the $36,060 Open Space Value the assessor determined for tax year 2017-18, or that the Property's RMV as of January 1, 2018, was lower than the $4,500,000 amount

---

[14] Similar full-year classification of property as specially assessed or as exempt is evident in other parts of property tax law. *See Boardman Acquisition*, 361 Or at 448-50 (farmland disqualification affects one of two entire tax years, depending on date of disqualification); ORS 311.410(1), (3) (property taxable on July 1 remains taxable for entire ensuing tax year; property exempt on July 1 remains exempt for ensuing tax year).

recorded for tax year 2018-19, or both. At oral argument, taxpayer's counsel stated that: "It's really going to be both values at issue, both the value as open space in the last year of classification and the value according to ORS 308.205, the RMV, in the year of withdrawal." By doing so, taxpayer would reduce the Cap and potentially limit taxpayer's Additional Assessment under ORS 308A.318(2). The department contends that taxpayer's attempt to do so is time-barred.

The court first observes that the component values that taxpayer seeks to challenge are values that the assessor was required to record in the ordinary course of annual assessment. Nothing in the Open Space Lands Statutes expressly or implicitly requires an assessor to determine the component values twice, once for annual assessment purposes and separately for purposes of calculating the Cap if the property is withdrawn. As shown on the table above, the statutes expressly require the assessor to *annually* determine both the RMV under ORS 308.205 and (so long as the property is classified) the Open Space Value under ORS 308A.315(5), among other values. By contrast, the Open Space Lands Statutes contain no express requirement to redetermine any values for purposes of determining the Cap when the land is withdrawn from classification. *See* ORS 308A.318(2) (Additional Assessment is "limited to a total amount not in excess of the dollar difference in the value of the land as open space land for the last year of classification and the real market value under ORS 308.205 for the year of withdrawal.").[15] Nor has either party identified any reason to infer from the Open Space Lands Statutes that an assessor can or must redetermine any value upon withdrawal.

The question, then, becomes whether taxpayer's appeal challenging the component values of the Cap is timely

---

[15] The court notes that the Open Space Lands Statutes refer to the Open Space Value slightly differently in different provisions, but the parties agree that each term refers to the value determined by following the steps prescribed in ORS 308A.315(5), and the court agrees that the minor differences do not denote a difference in meaning. *Compare* ORS 308A.315(5) (the "open space value of land") *with* ORS 308A.318(2) ("the value of the land as open space land"). *See also* ORS 308A.315(2) (referring to the "land's open space value"). The court sees no basis to conclude that any of the minor variations implies a requirement to redetermine any values when property is withdrawn from classification.

pursuant to more general appeal statutes. The department has pointed to two appeal procedures: the regular annual property tax valuation dispute process that commences with a petition to the county Board of Property Tax Appeals (BOPTA), and the all-purpose process by which any person can appeal to the Magistrate Division within 90 days after an "act, omission, order or determination" of a tax official becomes known to the person, as provided in ORS 305.275(1); ORS 305.280(1). Department's counsel stated at oral argument that taxpayer could have appealed to the BOPTA. The BOPTA process would have required taxpayer to file a petition no later than January 2, 2018,[16] and there is no evidence taxpayer did so. At oral argument, however, the department acknowledged that its BOPTA argument is flawed as to the Open Space Value, because a BOPTA lacks jurisdiction to increase any value. *See* ORS 309.026(2)-(4) ("board shall hear petitions for the reduction" of certain values).[17] The court concludes that the regular annual BOPTA procedures gave taxpayer no statutory right of appeal that could have addressed both components of the Cap.

At oral argument, the department reframed its position, asserting that taxpayer could have contested the assessor's determination of the Open Space Value by appealing to

---

[16] The statutory deadline to appeal to the BOPTA for the 2017 assessment year and tax year 2017-18, December 31, 2017, fell on a Sunday and therefore was extended to January 2, 2018. *See* ORS 309.100(2) ("Petitions filed under this section shall be filed during the period following the date the tax statements are mailed for the current tax year and ending December 31."); ORS 174.120(1) (excluding the last day from the computation of statutory time limitations if the last day is a "legal holiday or *** Saturday"); *see also* ORS 187.010(1)(a) (designating Sundays as legal holidays).

[17] Nor was the BOPTA process immediately available to contest the other component of the Cap (the RMV). That is because the RMV at issue is for tax year 2018-19, as explained above. The assessor could not have determined the RMV for tax year 2018-19 before the annual assessment date, which was January 1, 2018, at 1:00 a.m. *See* ORS 308.210(1). And taxpayer could not have filed a BOPTA petition as to that RMV until "the period following the date the [annual property] tax statements have been mailed and ending December 31." ORS 309.100(2). The annual deadline to mail property tax statements is October 25; therefore, in this case, taxpayer could not have appealed the RMV component of the Cap to the BOPTA until approximately eight months after the assessor's February 27 withdrawal letter. *See* ORS 311.115 ("The assessor shall deliver the roll to the tax collector each year at such time as the assessor and the tax collector agree is necessary to enable the mailing of tax statements on or before October 25.").

the Magistrate Division under ORS 305.275(1).[18] Taxpayer argues that it could not have done so because it was not "aggrieved" until the assessor withdrew the land from classification as Open Space Land. Taxpayer's counsel stated at oral argument that "I don't know how the taxpayer would be 'aggrieved' until we have this disqualification and calculation of additional taxes."

The Oregon Supreme Court has summarized the requirements under ORS 305.275(1):

> "To appeal [under ORS 305.275(1)], the plaintiff must meet three distinct preconditions. The plaintiff must show: (1) that the plaintiff is 'aggrieved by an act or omission of' the county assessor; (2) that the act or omission 'affects the property' of the aggrieved plaintiff; and (3) that 'no other statutory right of appeal' is available."

*NW Medical Labs. v. Good Samaritan Hospital*, 309 Or 262, 267, 786 P2d 718 (1990). In this case, this court has concluded above that the third precondition, lack of any "other statutory right of appeal," is satisfied. The court's remaining task is to identify whether any "act" caused taxpayer to be "aggrieved" and its property to be "affected."

---

[18] ORS 305.275 sets forth the standing requirements for appeals to the Magistrate Division of the Tax Court:

"(1)(a) The person must be aggrieved by and affected by an act, omission, order or determination of:

"* * * * *

"(C) A county assessor or other county official, including but not limited to the denial of a claim for exemption, the denial of special assessment under a special assessment statute, or the denial of a claim for cancellation of assessment[.]

"* * * * *

"(b) The act, omission, order or determination must affect the property of the person making the appeal or property for which the person making the appeal holds an interest that obligates the person to pay taxes imposed on the property. * * *

"(c) There is no other statutory right of appeal for the grievance."

The relevant portion of ORS 305.280(1) states, subject to exceptions inapplicable to this case:

"[A]n appeal under ORS 305.275(1) or (2) shall be filed within 90 days after the act, omission, order or determination becomes actually known to the person, but in no event later than one year after the act or omission has occurred, or the order or determination has been made."

The Oregon Supreme Court recently focused on the "aggrieved" and "affected" preconditions, explaining that a taxpayer is "aggrieved" when it "suffer[s] an injury or wrong that creates a private interest in the outcome of the matter that is different from that of a member of the general public." *Seneca Sustainable Energy, LLC v. Dept. of Rev.*, 363 Or 782, 796, 429 P3d 360 (2018). A taxpayer's property is "affected by" an act or omission if it results in an "improperly inflated" tax bill. *See id.* at 798.[19] A line of cases in this court, predating *Seneca*, interprets ORS 305.275(1) as requiring that the taxpayer have "an immediate claim of wrong" or injury. *See Kaady v. Dept. of Rev.*, 15 OTR 124, 125 (2000) (taxpayer lacked standing to appeal excessive RMV on the roll because the lower RMV sought by taxpayer still would exceed AV; rejecting argument based on "speculative" risk of future law changes (citing *Parks Westsac L.L.C. v. Dept. of Rev.*, 15 OTR 50 (1999))); *Sherman v. Dept. of Rev.*, 17 OTR 322 (2004) (no standing where taxpayers admitted in briefing that "the RMV of the floating home of Slip No. 10 does not immediately impact the Plaintiffs"); *see also, e.g.*, *Clackamas Co. v. Clackamas County Assessor*, TC-MD 030868E, 2003 WL 22120735 at *1-2 (2003) (no standing to contest excessive RMV of specially assessed farmland merely because RMV would be a factor in calculating additional tax due "should the property ever by removed from the special assessment program").

---

[19] In *Seneca*, the court held that the taxpayer met the "aggrieved by" and "affected by" requirements. 363 Or at 798-99. Much, but not all, of the taxpayer's property was exempt from property tax because it was located in an "enterprise zone." *See id.* at 784-86. To obtain the enterprise zone tax exemption, the taxpayer entered into an agreement with the City of Eugene and Lane County in which the taxpayer agreed to pay a "public benefit contribution" if it "failed to meet certain economic development and employment goals." *Id.* at 785-87. The taxpayer failed to meet those goals for two successive years. *Id.* The contribution was based on the amount of property tax that the taxpayer would have had to pay were it not tax exempt. *Id.* at 785. The department resisted the taxpayer's appeal of the county's determination of the property's RMV, arguing in part that the taxpayer was not "aggrieved" by the county's RMV determination because the property was exempt from taxation and the "public benefit contribution" was not a tax. *Id.* at 794-95. The court disagreed, concluding that the taxpayer demonstrated that it had a "private interest in the outcome of the matter that is different from that of a member of the general public" because the city's and county's use of "the department's erroneous [RMV] determination and the county's notation of that value on the assessment roll *** impose[d] a significant public benefit contribution on [the taxpayer] for each of the tax years in question." *Id.* at 796-97. The court also held that the taxpayer's property was "affected by" the RMV determination because taxes were imposed on the taxpayer's nonexempt property "based on the department's [RMV] determination." *Id.* at 798.

The department argues that the assessor's establishment of the Open Space Value was the requisite "act" that taxpayer could have challenged under ORS 305.275(1).[20] Although the department does not describe specifically how or when this act occurred, the stipulations suffice to establish that it did occur. Under *Seneca*, taxpayer was "aggrieved" by this act because taxpayer owned the property and thus had "a private interest in the outcome of the matter that is different from that of a member of the general public." 363 Or at 796. However, the court is not persuaded that the act of setting the Open Space Value at $36,060 "affected" taxpayer's property, because that act alone could not have "improperly inflated" any amount taxpayer owed.[21] *Cf. id.* at 798 ("Seneca's property tax bills * * * were improperly inflated if the department's real market value determination was erroneous."). The premise of taxpayer's claim is that the assessor set the Open Space Value for the last year of classification too low *in relation to* the RMV for the year of withdrawal, creating too large a gap between those values. Taxpayer seeks to narrow that gap, which serves as the Cap on its Additional Assessment, by proving that the Open Space Value is higher, that the RMV is lower, or both. But in any event, it is the total amount of that "gap" or "Cap" that "affects" taxpayer's Property. The assessor's setting of the Open Space Value alone is not an "act" affecting taxpayer's Property.[22] The requisite act occurred only when the assessor withdrew the Property from classification. Until the assessor did that, the "year of withdrawal" could not be known; therefore, the second component value used to

---

[20] The department originally argued that, "as with the open space value of the property," taxpayer could have petitioned the BOPTA "for a reduction in the RMV on the roll for 2017-18." As the court has explained, tax year 2017-18 is not the relevant year for purposes of determining the RMV component of the Cap; therefore, even if the BOPTA had the authority to increase the 2017-18 Open Space Value, taxpayer would not have been able to challenge both values in the same proceeding as the department seems to assert. At oral argument, the department focused its argument on the taxpayer's appeal of the 2017-18 Open Space Value.

[21] As to the regular annual assessment for tax year 2017-18, the assessor's setting of an incorrectly low Open Space Value would have *deflated*, rather than inflated, the amount taxpayer owed, because that lower Open Space Value also served as the Property's AV.

[22] In addition, the setting of only the first of two required values also would not create an "immediate claim of wrong" as required under *Kaady*.

determine the Cap (the RMV for the year of withdrawal) was likewise unknown.[23]

Applying this reasoning to the facts, the assessor withdrew the Property from classification as Open Space Land on February 27, 2018. Taxpayer appealed to the Magistrate Division on May 18, 2018, less than 90 days after the assessor's letter. The court concludes that taxpayer's appeal is timely, and taxpayer may seek to prove at trial the Property's Open Space Value for tax year 2017-18 and the RMV for tax year 2018-19. The court will deny the department's motion.

The court does not decide today whether, if taxpayer proves a higher Open Space Value at trial, that value changes the Property's AV for purposes of the amount of tax due for tax year 2017-18. Except for a remark by the department at oral argument that the assessor would lack statutory authority to effect such a change, the parties have not presented, much less briefed, the issue.[24]

---

[23] The court notes that this result is consistent with this court's statement in an earlier case, implying that a taxpayer may, upon disqualification from a special assessment program, appeal not only the act of disqualification but also the values on the roll for the years for which additional tax is assessed. *See Eby v. Dept. of Rev.*, 15 OTR 247, 251 (2000) ("[T]he [disqualification] statute [for specially assessed zoned farmland, ORS 308.397 (1995 ed),] contemplates that the owner will either accept the action or appeal to this court under ORS 305.275. ORS 305.280(1) gives the owner only 90 days to file an appeal. The 90 day-appeal period begins running when an owner learns of the disqualification ***. An owner may agree with the assessor's action of disqualifying the property, but may disagree with the market value estimate placed on the roll or the amount of additional tax calculated or both. If that information is not contained in the notice [of disqualification], the owner is unable to determine whether to appeal on those points."); *see also Georgia-Pacific Consumer Products LP v. Clatsop County*, 20 OTR 138, 140 & n 2 ("The department expressed its view that taxpayer may challenge the amount of potential [additional] tax due as computed and noted on the assessment roll. The department bases its conclusion on the premise that taxpayer did not have standing in earlier years to challenge the value determinations because, in those years, the existence of a complete exemption made the question of value one without practical significance sufficient to make a challenge at that time justiciable. Taxpayer takes the same position. The court expresses no opinion on the question.").

[24] The court's conclusion also makes it unnecessary to address certain arguments by taxpayer that the Open Space Value is not equal to the stipulated "Taxable Specially Assessed Value" because MAV can artificially depress the Open Space Value. The court notes only that it is not logically possible for MAV to affect the "snapshot" Open Space Value measured as of January 1 at 1:00 a.m. for the last year property is classified as Open Space Land.

## VII.   CONCLUSION

Now, therefore,

IT IS ORDERED that the department's Motion for Summary Judgment is denied.